IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 2:13-cv-01326-LDW-GRB** |
| ) | |
| ELK ASSOCIATES FUNDING ) | |
| CORP. ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**RECEIVER'S RECOMMENDATION OF DISPOSITION OF CLAIMS RECEIVED
IN RESPONSE TO CLAIMS BAR DATE**

**I. INTRODUCTION**

Pursuant to this Court's Order entered April 10, 2014 (the "Bar Date Order"), the U.S. Small Business Administration ("SBA"), as Receiver ("Receiver") for Elk Associates Funding Corporation ("Elk"), solicited claims against Elk, the receivership estate, and assets or funds in the possession of the Receiver.  The Receiver's solicitations were made by direct mailings of the Notice of the Claims Bar Date ("Notice") to known prospective claimants, and by publication of the Notice once each week for two (2) weeks in *New York Daily News* on May 30, 2014 and June 5, 2014**.**  Mailings were sent via U.S. mail, postage prepaid, to all persons or entities, other than the SBA, which the Receiver had reason to believe were creditors, agents, former directors or officers, employees, partners, participant investors or lenders with Elk portfolio concerns of Elk and to any other persons or entities who had, during the term of the receivership, asserted a claim against Elk, the receivership estate, or assets or funds in the possession of the

Receiver.

The Bar Date Order required all claims to be submitted to E. Kevin Dahill, Principal Agent for the Receiver, within thirty (30) days of the last date of publication of the Notice (the "Notice"). The Claims Bar Date was June 7, 2014 ("the Bar Date"). In response to the Receiver's solicitations, the Receiver received nine (9) claims on or before the Claims Bar Date. Claims were received for services rendered pre Receivership from (1) Marino Partners LLP (a law firm); (2) Trans Union LLC (an information provider); (3) Porzio, Bromberg & Newman. PC ("Porzio") (a law firm); (4) Seyfarth, Shaw LLP (a law firm), and (5) Iron Mountain Corp (a document storage company). In addition, claims were received from various entities with whom Elk participated in lending activities, specifically from (6) Fundex, Capital Corporation ("Fundex"); (7) Bridge Funding, Incorporated ("Bridge"); (8) Critical Capital Growth Fund ("Critical Capital"); and (9) GE Capital Corp. In addition to the claims received in response to the Notice, SBA has a claim against Elk arising from SBA's leverage financing of Elk. Pursuant to paragraph 5 of the Bar Date Order, the SBA was not required to file its claim against Elk with the Receiver.

The nine (9) claims received in response to the Notice and SBA's claim against Elk will be discussed below. In accordance with paragraph 8 of the Bar Date Order, any person who failed to file a claim against Elk, the Receivership estate, or assets or funds in the hands of the Receiver in accordance with the provisions of the Bar Date Order, is forever barred and enjoined from asserting, pursuing, or prosecuting such claims against Elk, the Receiver or assets or funds in the possession of the Receiver.

The Receiver is submitting this Recommendation of Disposition of Claims

Received in Response to the Bar Date Order (the "Receiver's Recommendations") to inform the Court of claims received and/or reviewed in response to the Notice and to recommend a plan for distribution of the assets of Elk in the order of priority discussed below.

## II. RECEIVERSHIP BACKGROUND AND ELK INDEBTEDNESS TO SBA

Elk, a corporation formed under the laws of New York, was licensed by SBA as a Small Business Investment Company ("SBIC") under Section 301(c) of the Small Business Investment Act of 1958, as amended (the "Act"), 15 U.S.C. § 681(c). Elk's Articles of Incorporation Partnership provide that it was organized solely to do business under the Act and the Regulations promulgated by the SBA pursuant to the Act, codified at Title 13 of the Code of Federal Regulations, Part 107 (the "Regulations). Elk's SBIC License Application contains an acknowledgement that it would be operated in accordance with the Act and the Regulations.

Pursuant to the Act, SBA provided funding to Elk through the purchase of multiple debentures commencing after its license was granted in 1980. The debentures, a form of Leverage as defined by the Regulations, are expressly subject to the Regulations and incorporate the Regulations by reference. Prior to the inception of the Receivership, Elk defaulted on repayment of the remaining principal of its outstanding debentures with total principal value of $20,780,072.82 and accrued interest of $74,707.93

On February 14, 2014, the United States, on behalf of the SBA, filed a Complaint in this Court against Elk based on Elk's failure to comply with SBA's regulations, including its failure to cure a condition of capital impairment and its default in the repayment in full on the debentures. Elk consented to the relief sought in the SBA's

3

Complaint and, after a transfer from the United States District Court for the Southern District of New York, this Court entered a Consent Order of Receivership on April 24, 2013. Pursuant to the Receivership Order, this Court took exclusive jurisdiction of Elk and all of its assets and property, and appointed SBA as permanent Receiver for the purpose of marshaling and liquidating all of the assets of Elk and satisfying the claims of creditors therefrom in the order of priority as determined by this Court (Receivership Order, ¶ 1).

### III. NOTICE, DETERMINATION AND RECOMMENDED PRIORITY OF CLAIMS

Listed below is a description of each claim against the Receivership estate and the Receiver's recommendations as to the disposition thereof. The claims are listed in the Receiver's recommended order of priority of payment of the claims as follows:

A.  **ADMINISTRATIVE CLAIMS**

Paragraph 5 of the Receivership Order provides for the retention of personnel to effectuate the operation of the receivership, and authorizes the expenditure of receivership funds to compensate such personnel and to pay other expenses for the administration of the receivership. The Receiver is not required to obtain Court approval prior to the disbursement of receivership funds for payments to personnel employed by the Receiver or for expenses incidental to the administration of the receivership. All administrative claims are paid on a current basis and have priority over all other claims of the receivership estate.

B.  **RECEIVER'S CERTIFICATES**

Paragraph 9 of the Receivership Order authorizes the Receiver to borrow, on

behalf of Elk, up to $1,000,000.00 from SBA, and directs the Receiver to cause Elk to issue Receiver's Certificates of Indebtedness ("Receiver's Certificates") in the principal amount of the sums borrowed. Pursuant to Paragraph 9 of the Receivership Order, the Receiver's Certificates, incurred for the payment of administrative and necessary estate expenses, have priority over all other indebtedness of Elk, excluding actual administrative expenses of the Receivership. The Receiver has borrowed $200,000.00 from the Receiver on behalf of Elk and there is one outstanding Receiver's Certificate.

C. **RECOMMENDED ALLOWED PRE-RECEIVERSHIP CLAIMS OF GENERAL CREDITORS**

**The Receiver recommends payment of the following general creditor claims, on a pro rata basis as funds become available:**

1. Claimant: Marino Partners LLP

   Amount of Claim: $21,083.21

   Amount Recommended be Allowed: $21,083.21

   For legal services rendered pre-receivership, primarily on E&Y Construction, Inc. and loan foreclosure on an E&Y Note held by Elk.

2. Claimant: Trans Union LLC

   Amount of Claim: $43.45

   Amount Recommended be Allowed: $43.45

   For subscription fees associated with access to TransUnion data

3. Claimant: Porzio, Bromberg & Newman

   Amount of Claim: $13,536.40

   Amount Recommended be Allowed: $13,536.40

   For legal services rendered pre-receivership, primarily on Mountain View

5

       Bar and Grill and loan foreclosure on Mountainview Note held by jointly by Elk and Fundex.

4.     Claimant: <u>Seyfarth Shaw, LP</u>

           Amount of Claim: $2,475.00

Amount Recommended be Allowed: $2,475.

For legal services rendered pre-receivership, primarily on the sale of Chicago taxi medallion loans held by Elk.

5.     Claimant: <u>Iron Mountain</u>

           Amount of Claim: $1, 445.01

Amount Recommended be allowed: $1,445.01

For archival off-site document storage and retrieval.

6.     Claimant: <u>Fundex Capital Corporation</u>

           Amount of Claim: $65,084.89

Amount Recommended be Allowed: $65,085.89

Elk portion of expenses incurred by Fundex in furtherance of Fundex's attempts, as lead lender in a loan syndicated with Elk, to recover from a defaulted loan and foreclosure by subordinate lenders in accordance with the Settlement Agreement executed by Elk on or about March 20, 2012.

7.     Claimant: <u>Bridge Funding Incorporated</u>

           Amount of Claim: $68,442.36

Amount Recommended be Allowed: $68,442.36

As a result of a clerical error in computing interest payment on a shared loan to Life House Golden Acres Properties, LLC, Bridge asserted that

6

Elk was overpaid. When the loan was sold this error was discovered and documented, but Elk declined to close the sale including the correction. Bridge and Elk closed the transaction with Bridge reserving its right to pursue later redress as represented by this claim The Receiver has determined that the correction is justified and recommends payment thereon.

8. Claimant: Critical Capital Growth Fund, LP

Amount of Claim: $39,584.15

Amount Recommended be Allowed: $39,584.15

Elk portion of expenses incurred by Critical Capital, acting as lead lender in a loan syndicated with Elk, in furtherance of the participating lenders' attempts to restructure the debtor of a defaulted loan in order to secure a recovery. The expenses are due in accordance with the Amended and Restated Joint Participation Agreement executed by Elk on or about February 28, 2005

9. Claimant: U.S. Small Business Administration ("SBA")

Amount of Claim: $20,780,072.82 principal, plus accrued interest as discussed below

Amount Recommended to be Allowed: $20,780,072.82 plus accrued interest

D. CLAIMS FOR WHICH THE RECEIVER RECOMMENDS DENIAL

1. Claimant: General Electric Credit Corporation ("GE Credit")

7

Amount of Claim:  There is no sum certain specified in the Claim.  As such, it is a contingent claim based on an indemnity provision whose amount cannot be reasonably calculated or ascertained with finality.  GE Credit asserts a claim for, among other things, unspecified indemnification, costs and expenses subject to such indemnification in "amounts that the Claimant is unable to ascertain at this time" under the Amended and Restated Credit Agreement for a loan made to Education Borrowings.  Elk is a participant in the Agreement, but has no current obligation to any party.  To the extent that Elk is responsible for the proper distribution of payments it may receive, Elk will comply with the terms of the Agreement.

Amount Recommended to be Allowed:  None

E.  In summary, the Receiver is recommending the following priority of payment of claims received:

1. First, to Administrative Expenses of the receivership estate;
2. Next, after Administrative Expenses are made current, to the payment in full of Receiver's Certificates of Indebtedness;
3. Next, after Administrative Expenses are made current and after the payment in full of Receiver's Certificates, to the following unsecured general creditors on a pro rata basis as funds permit:
   a. Marino Partners for $21,083.21; and
   b. Trans Union for $43.45
   c. Porzio, Bromberg and Newman for $13,536.40

8

      d. Seyfarth Shaw, LP for $2,475.00

      e. Iron Mountain for $1,145.70

      f. Fundex for $65,084.89

      g. Bridge for $68,442.36

      h. Critical Capital for $39,584.15

      i. SBA for $20,780,072.82 plus accrued interest.

4. Next, after Administrative Expenses are paid current, Receiver's Certificates are paid in full, the payment in full of the general unsecured creditors, to the share holders of Elk Associates Funding Corp. as set forth and set out in the Elk Associates Funding Corp. Agreement of Incorporation.

### III. SUMMARY PROCEDURE

Paragraph 7 of the Bar Date Order provides that in the event the Receiver has recommended the denial of any claim, such claimant may respond in opposition within thirty (30) days, and this "Court will resolve said claim(s) expeditiously through a summary procedure that this Court will determine at that time." In the instant case, the Receiver has recommended the denial of a claim of GE Credit and thus a summary procedure may be necessary.

### IV. CONCLUSION

The Receiver respectfully recommends and requests that this Court approve the priority of payment of expenses and claims as recommended by the Receiver and respectfully requests that this Court enter the proposed Order submitted herewith

                                                        Respectfully submitted,

Dated: _____                      /s E. Kevin Dahill_____
                                                       E. Kevin Dahill
                                                       Principal Agent for the Receiver
                                                       U.S. Small Business Administration as
                                                       Receiver for Elk Associates Funding Corporation
                                                       1100 G Street, N.W., Suite 1100
                                                       Washington, D.C. 20001
                                                       Telephone: (202) 272 3617
                                                       Facsimile: (202) 504 2247
                                                       ekdahill@optonline.net