**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, on behalf of its agency, the United States Small Business Administration<br><br>Plaintiff,<br><br>vs.<br><br>ELK ASSOCIATES FUNDING CORP.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)           13 Civ. 1326-(LAW)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION TO LIFT JUDICIAL STAY FOR A LIMITED PURPOSE

COMES NOW the United States Small Business Administration ("SBA") as Receiver ("the Receiver") for Elk Associates Funding Corp. ("Elk") and, by and through its undersigned counsel, and in support of its Motion to Lift the Judicial Stay for a Limited Purpose, states as follows:

## I. BACKGROUND

Elk, a New York corporation that was licensed as a Small Business Investment Company ("SBIC") in 1980, was placed into receivership by Order of this Court entered April 24, 2013 ("the Receivership Order") pursuant to the Small Business Investment Act of 1958, 15 U.S.C. §687c, as amended. Elk's sole shareholder is AmeriTrans Capital Corporation ("AmeriTrans"), a Delaware corporation that was at one time publically traded.

The Receivership Order appointed SBA as receiver of Elk for the purposes of, among other things, (1) marshaling Elk's assets and (2) pursuing all of Elk's claims for the benefit of its creditors as approved by this Court. In accordance with the exclusive jurisdiction provision of 15 U.S.C. §687c, the Receivership Order included a stay against all civil legal proceedings

involving Elk and its assets and enjoined any parties from filing civil legal proceedings against Elk and its assets without the approval of this Court. The Receiver was appointed for the primary purpose of liquidating all of Elk's assets and satisfying the claims of creditors in the order of priority as determined by this Court.

In May, 2013, the Receiver met with AmeriTrans and Elk's then President and Chairman of the Board to conduct a transition meeting.  The Receiver took possession of Elk's official books and records, which consisted, in part, of Elk's corporate governing documents and Certificate of Incorporation ("Elk"). The Receiver was informed that, given the length of time Elk had been an SBIC, there were numerous files in storage at an offsite facility, numerous boxes and files on site, as well as various server and service providers of electronic information.  At the time of the transition meeting, no minutes of board of directors meetings for Elk were transferred to the Receiver[1].

After its appointment, the Receiver transferred the cash balance in Elk's account to the Receiver's trust account and  reviewed Elk's financial and banking information, including quarterly financial statements submitted to SBA prior to the Elk receivership.  In its financial statement for the quarter ending March 31, 2012, Elk reported, as an asset, a "Due From Parent" (AmeriTrans) of $10,100,527.  On April 25, 2013, AmeriTrans filed a Form 8-K with the Securities and Exchange Commission ("SEC") reporting that Elk was due $11,863,927. Ultimately, the Receiver determined that the amount due the Elk receivership estate from AmeriTrans was $12,339,927.

Although various communications took place, the Receiver and AmeriTrans were unable to reach a resolution satisfactory to both parties.  On or about October 2, 2015, the Receiver for

---

[1]After having issued a subpoena to Elk's sole shareholder, AmeriTrans Capital Corp., in November, 2015, the Receiver was able to access the minutes of meetings of both Elk and AmeriTrans, whose board meetings were, in most instances, held jointly.

Elk made demand upon AmeriTrans for $12,339,927 to be paid on or before October 15, 2015. AmeriTrans failed to remit any payments on the amount due Elk and has since filed for bankruptcy in the U.S. Bankruptcy Court for the District of Massachusetts. Elk is listed as an unsecured creditor that is owed $12,339,927 in AmeriTrans's bankruptcy filing schedules.

Since its appointment, the Receiver has subpoenaed numerous financial institutions and legal representatives of both Elk and AmeriTrans, as well as AmeriTrans itself, in order to determine of what the $12,339,927 due Elk was comprised. On or about November, 2015, in response to a subpoena issued by the Receiver, AmeriTrans allowed the Receiver access to its books and records. Among those records were board of directors' minutes for Elk, which minutes had not been turned over to the Receiver by Elk's former managers despite the language in paragraph three (3) of the Receivership Order specifically requiring just that.

After reviewing the minutes of the meetings of Elk's board of directors, it became evident that monies from Elk were transferred to AmeriTrans with the knowledge and approval of certain of Elk's officers and directors for the purpose of paying AmeriTrans debt to third parties. The Receiver found that at least $4,500,000 was transferred by Elk to AmeriTrans in March, 2012, while litigation with the U.S. Small Business Administration ("SBA") was ongoing and after SBA had accelerated payment of Debentures (a form of SBA Leverage as that term is defined at 13 C.F.R. §107.5, *Leverage* (2016) issued by Elk in favor of SBA totaling over $20 million. A review of Elk's board of directors' minutes also revealed that, from 2009 through 2013, Elk advanced AmeriTrans management expenses of approximately $5.7 million, and transferred over $6.8 million in cash to AmeriTrans.

These advances were approved by the officers and directors of both Elk and AmeriTrans, despite the fact that recovery of the funds advanced was unlikely. For example, SEC Form 10-K

for the fiscal year ending June 30, 2010 ("the 2010 10-K"), filed on September 28, 2010 by AmeriTrans, states at page 19 that AmeriTrans had not operated at a profit "in recent years" and "anticipated incurring a loss in fiscal year 2011 . . ."   AmeriTrans went on to report that it had a decline in revenue from $6.3 million in 2008 to $1.7 million in 2010.  The books and records produced to the Receiver by AmeriTrans in November, 2015 indicate that the 2010 10-K was approved by the Board of Directors of both AmeriTrans and Elk at a meeting held on September 23, 2010.

Similarly, SEC Form 10-K for the fiscal year ending June 30, 2011("the 2011 10-K"), filed on September 28, 2011 by AmeriTrans, states at page 20 that AmeriTrans had not operated at a profit "in recent years" and "anticipated incurring a loss in fiscal year 2012 . . ." AmeriTrans went on to report that it had a decline in revenue from $6.3 million in 2008 to $2.1 million in 2011.  The books and records produced to the Receiver by AmeriTrans in November, 2015 indicate that the 2011 10-K was approved by the Board of Directors of both AmeriTrans and Elk at a meeting held on September 27, 2011.

Finally, the SEC Form 10-K for the fiscal year ending June 30, 2012 ("the 2012 10-K"), filed on September 28, 2012 by AmeriTrans, states at page 25 that AmeriTrans had not operated at a profit "in recent years" and "anticipated incurring a loss in fiscal year 2013 . . ." AmeriTrans went on to report that it had a decline in revenue from $6.3 million in 2008 to $2.1 million in 2012.  The 2012 10-K was approved by the Board of Directors of both AmeriTrans and Elk at a meeting held, upon information and belief, on or about September 21, 2012.

From 2009 through at least September, 2012, the officers and directors of Elk and AmeriTrans knew that AmeriTrans was in a precarious financial position. Regardless, the officers and directors of Elk continued, year after year, to advance monies to AmeriTrans from

4

Elk in violation of the Act and Regulations, specifically, 13 C.F.R. §107.730 (2009-2013),

*Conflicts of Interest*, and 13 C.F.R. §107.885, *Disposition of assets to Licensee's Associates.* The

latter provides that "[e]xcept with SBA's prior written approval", an SBIC is "not permitted to

dispose of assets . . . to any Associate" if the SBIC has Leverage outstanding. AmeriTrans is

Elk's sole shareholder and an Associate of Elk as defined at 13 C.F.R. §§107.5, *Associate,*

(2),(4)(5). Regardless, Elk's former officers and directors never asked for, and never received,

SBA approval in writing or otherwise, for the disposition of Elk's cash to its Associate,

AmeriTrans.

     Section 314 of the Small Business Investment Act, 15 USC §687f(a), provides that

"wherever a licensee violates any provision of this chapter or regulation issued thereunder by

reason of its failure to comply with the terms thereof or by reason of its engaging in any act or

practice which constitutes or will constitute a violation thereof, such violation shall be deemed to

be also a violation and an unlawful act on the part of any person who, directly or indirectly,

authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in the

commission of any acts, practices, or transactions which constitute or will constitute, in whole or

in part, such violation." Section 314 of the Small Business Investment Act, 15 USC §687f(b),

provides that "it shall be unlawful for any officer, director, employee, agent, or other participant

in the management or conduct of the affairs of a licensee to engage in any act or practice, or to

omit any act, in breach of his fiduciary duty as such officer, director, employee, agent, or

participant, if, as a result thereof, the licensee has suffered or is in imminent danger of suffering

financial loss or other damage."

     As stated above, Elk never requested and never received SBA's written approval for the

advances made to AmeriTrans totaling over $12 million. Thus, each and every advance was a

violation of the Act and Regulations.  Under Section 314f of the Act, each and every officer and director of Elk that authorized, approved, transferred, or otherwise facilitated the advances from Elk to AmeriTrans caused a violation of the Regulations.   It is not unreasonable to believe that the funds being transferred out of Elk to AmeriTrans were unrecoverable, especially in light of the annual reports AmeriTrans filed with their federal regulator, the SEC, which reports were approved by the Board of Directors of both Elk and AmeriTrans.  It is the Receiver's belief that Elk's officers and directors acted in a manner that was not in the best interest of Elk, breached their fiduciary duty to Elk and caused it financial loss and damage.

After AmeriTrans failed to honor the demand made by the Receiver, in January, 2016 demand was made upon the individual former officers and directors for the losses caused to Elk because of the unpaid advances to AmeriTrans. To date, although discussions have commenced and the Receiver has provided voluminous documentation to the former officers and directors, the amounts remain outstanding.  Given that ten (10) months have passed since demand was made, nine (9) months have passed from the date payment was due, and settlement discussions with counsel for the various defendants has not resulted in a settlement, the Receiver has determined that the initiation of civil legal proceedings against the former officers and directors of Elk for the acts that caused the $12 million loss to Elk and its creditors is in the best interest of the receivership estate.

## II. STANDARD OF REVIEW

In *SEC v. Wencke*, 622 F.2d 1363, 1373-74 (9th Cir. 1980) ("*Wencke I*") and *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ("*Wencke II*"), the Ninth Circuit addressed the standard to be employed by a district court in determining whether to lift a receivership stay.  In

*Wencke II*, the Ninth Circuit held that a district court should consider three factors to determine

whether lifting a receivership stay is appropriate:

> (1) whether refusing to lift the stay genuinely preserves the *status quo* or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

742 F.2d at 1231.  The *Wencke II* test "simply requires the district court to balance the interest of

the Receiver and the moving party . . . . [T]he interest of the Receiver are very broad and include

not only protection of the receivership *res*, but also protection of defrauded investors and

considerations of judicial economy."  *United States v. Acorn Technology Fund, L.P.*, 429 F.3d

438, 443 (3rd Cir. 2005) (citing *SEC v. Universal Financial*, 760 F.2d 1034, 1038 (9th Cir.

1985)).  The *Wencke II* standard has been widely accepted in application and has been adopted

by courts in the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits.

*See SEC v. Stanford Int'l Bank Ltd.*, 465 Fed. App'x. 316, 320, (5th Cir. 2012); *Chizzali v. Gindi*,

642 F.3d 865, 872-73 (10th Cir. 2011); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438,

443 (3rd Cir. 2005); *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985); *United States*

*SEC v. N.D. Devs., LLC*, 2016 U.S. Dist. LEXIS 94016, *8 (D.N.D. Mar. 10, 2016); *United*

*States v. JHW Greentree Capital, L.P.*, 2014 U.S. Dist. LEXIS 79277, *11 (D. Conn. June 11,

2014); *Belsome v. Rex Venture Group, LLC*, 2013 U.S. Dist. LEXIS 181160, *3, (W.D.N.C. Dec.

30, 2013); *SEC v. One Equity Corp.*, 2010 U.S. Dist. LEXIS 124013, *19 (S.D. Ohio Nov. 23,

2010); *FTC v. 3R Bancorp*, 2005 U.S. Dist. LEXIS 12503, *5 (N.D. Ill. Feb. 23, 2005).  In

addressing a receivership stay and whether lifting a stay is appropriate, a court noted that

> the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant. Nevertheless, an appropriate escape

valve, which allows potential litigants to petition the court for
permission to sue, is necessary so that litigants are not denied a day
in court during a lengthy stay.

*Greentree Capital*, 2014 U.S. Dist. LEXIS 79277, at *11.

## III. ARGUMENT

The Stay should be lifted for the limited purpose of allowing the Receiver to commence
and pursue a civil action for (1) breach of fiduciary duty, (2) waste of corporate assets, (3) aiding
and abetting a breach of fiduciary duty, (4) conversion, (5) negligence and (6) any other
applicable civil cause of action against the former officers and directors of Elk that approved,
authorized or facilitated the advances from Elk to AmeriTrans that total over $12 million in the
aggregate and any other entities the Receiver finds are necessary to its civil action without
further order of this Court.

A.     **Elk Will Suffer Substantial Injury if the Stay is Not Lifted.**

In the event that the Receiver's motion is not granted and/or the stay is not lifted, Elk will
suffer substantial injury in that it will be unable to pursue an available avenue of recovery for the
$12 million loss.  Elk should be allowed to attempt to collect whatever possible from the
individuals whose regulatory violations, acts or omissions caused the $12 million indebtedness,
and against who demand has been made as part of the Receiver's duty to marshal Elk's assets.
As a consequence of the AmeriTrans bankruptcy filing, the Receiver's recourse against
AmeriTrans is limited and collection against Elk's former officers and directors may provide the
only viable avenue of recovery for the estate.  Thus, initiation of the suit is integral to the
Receiver's collection efforts.

**B.      The Timing of the Motion to Lift Stay is Appropriate.**

The Receiver's instant motion is appropriately timed.  It is true that a "district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate." *Acorn Tech. Fund,* 429 F.3d at 443.

The Elk Receiver has had ample time to sort and organize Elk's receivership estate.  *See Wencke I*, 622 F.2d at 1373-74.  The Elk receivership has been pending over three (3) years, giving the Receiver sufficient time to review Elk's business and financial records and make demand for monies due the Elk estate.  *See Wencke I*, 622 F.2d at 1373-74.  The Receiver has also completed its claims process and made distributions to creditors.  Thus, at this juncture the Receiver believes it is in possession of sufficient material facts to the extent that it is prepared to pursue its claims on behalf of Elk for the benefit of its estate.  *See id.*

Moreover, the inherent nature of the Stay is to protect the Receiver and the estate from any and all claims that would disrupt the receivership process.  If the Receiver seeks relief from the Stay for purposes of benefiting the estate, it is warranting that the time is proper for the estate to start pursuing its claims and that pursuit of such claims may be more beneficial to the estate than the protection of the Stay.  Such is the situation at bar.

**C.  The Receiver's Claim Against AmeriTrans Has Merit.**

A party seeking relief from a receivership stay need not prove its claims with certainty or specificity; in fact, it would "be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings."  *Acorn Technology Fund*, 429 F.3d at 444.  Rather, a "district court need only determine whether the party has *colorable* claims to assert which justifying lifting the receivership stay.  If it appears

that a claim has no merit on its face, that of course may end the matter." *Id.* (citing *Wencke II*, 742 F.2d at 1232).

It is undisputed that Elk has a claim against AmeriTrans for over $12 million; that figure has been disclosed by AmeriTrans in its bankruptcy schedules. The $12 million debt was incurred by Elk in violation of the Act and Regulations was authorized and approved by Elk's former officers and directors in violation of their fiduciary duties to Elk. Thus, Elk has a colorable claim against Elk's former officers and directors and has met the requirements for lifting the judicial stay imposed by the Receivership Order for a limited purpose.

## IV

## CONCLUSION

As Elk will suffer substantial injury if the Stay is not lifted, has timely filed its motion and has colorable claim against its former officers and directors for the $12 million improperly advanced to AmeriTrans, the Receiver respectfully requests that the Stay be lifted for the specific limited purpose of allowing the Receiver to commence and pursue a civil action for (1) breach of fiduciary duty, (2) waste of corporate assets, (3) aiding and abetting a breach of fiduciary duty, (4) negligence and (5) any other applicable civil cause of action against the former officers and directors of Elk that approved, authorized or facilitated the advances from Elk to AmeriTrans that total over $12 million in the aggregate and any other entities the Receiver finds are necessary to its civil action without further order of this Court.

Dated: November 17, 2016                    Respectfully submitted,


                                            /s _____
                                            ARLENE M. EMBREY
                                            Trial Attorney
                                            U.S. Small Business Administration
                                            409 Third Street, S.W., Seventh Floor
                                            Washington, D.C. 20416
                                            Telephone:    (202) 205-6976
                                            Facsimile:    (202) 481-0324
                                            Arlene.embrey@sba.gov


11