UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, )
on behalf of its agency, the United )
States Small Business Administration )
)
Plaintiff, )
)
vs. )  13 Civ. 1326-(LAW)
)
ELK ASSOCIATES FUNDING CORP., )
)
Defendant. )

---

### RECEIVER'S FOURTH REPORT FOR THE PERIOD OF
### MAY 1, 2016 THROUGH APRIL 30, 2017

#### I.  INTRODUCTION

This Fourth Receiver's Report ("Receiver's Report") is being filed with this Court by the U.S. Small Business Administration ("SBA" or "Receiver"), which was appointed Receiver for Elk Associates Funding Corporation ("Elk'"") pursuant to the Consent Order of this Court dated April 24, 2013.

This Fourth Receiver's Report, and the Schedule of Cash Receipts and Disbursements attached hereto as **Exhibit A**, covers the activities and cash position of the receivership for the period of May 1, 2016 through April 30, 2017, and include significant activities that occurred since April 30, 2017 and before the filing date of this Fourth Receiver's Report.

#### II.  BACKGROUND

Elk Associates Funding Corporation is a corporation formed under the laws of the state of New York[1] and is wholly owned by its parent Ameritrans Capital Corporation ("Ameritrans"), a Delaware corporation, which was a NASDAQ-traded company until it was delisted in July 2013. Elk and Ameritrans shared the same officers and directors until the Receiver was appointed on April 24, 2013. The sole purpose of Elk is to operate as a Small

---

[1] Previous Receiver's Report inadvertently stated that Elk was a Delaware corporation. Elk's parent company and sole shareholder, Ameritrans Capital Corporation, is a Delaware corporation.

Business Investment Company ("SBIC"), licensed by SBA pursuant to 15 U.S.C. § 681(c) on or about July 24, 1980 as SBIC License No. 02/02-5377.

Elk's SBIC License Agreement acknowledges that Elk was required at all times to be operated in accordance with the Small Business Act, as amended (the "Act"), and the Code of Federal Regulations, specifically Title 13, Part 107 (the "Regulations"). SBA provided leverage to Elk through the purchase and/or guaranty of debentures, a form of leverage, as those terms are defined under the Regulations. Subsequent to receiving SBA funding, Elk violated various provisions of SBA's Regulations. Accordingly, on February 24, 2013, SBA filed a complaint against Elk and Elk consented to SBA's appointment as Receiver. On April 24, 2013 this Court entered an Order ("Receivership Order"), by which it appointed the SBA as permanent Receiver of Elk for the purpose of liquidating all of Elk's assets and satisfying the claims of creditors in the order of priority as determined by this Court. Paragraph 12 of the Receivership Order provides that SBA is entitled to a judgment against Elk in the amount of $21,175,000 as of October 26, 2012, plus accrued interest through the date of entry of the Receivership Order (as reduced by principal and interest payments received by SBA, plus post-judgment interest pursuant to 28 U.S.C. §1961).

### III. OPERATION OF THE RECEIVERSHIP

#### A. General Operations

The overall function of the Receiver is to identify, marshal and liquidate the assets of Elk. To that end, the Receiver analyzed records kept by the former management of Elk as well as records of Elk's parent Ameritrans and SBA's records, prepared schedules and valuations of Elk's assets, solicited and analyzed claims against Elk and recommended to this Court their appropriate dispositions, and commenced legal proceedings to recover assets of Elk. The Receiver has sold

2

assets, collected funds due to Elk and otherwise continues to administer the receivership, in order to effectuate an orderly liquidation of Elk subject to the approval of this Court. Specific actions taken by the Receiver during this reporting period are discussed in greater detail below.

The Receiver's office is located at 1100 G St. N.W., 11th Floor, Washington, D.C. 20005. The Receiver shares office space and administrative services with numerous other receiverships for which SBA serves as court-appointed receiver.

**B.   Notice of Receivership**

In accordance with paragraph 4 of the Receivership Order, the Receiver gave written notice of its appointment to the relevant individuals and entities to the extent the Receiver was able to obtain correct mailing addresses. In addition, the Receiver sent notices of its appointment to all U.S. District Courts, in accordance with 28 U.S.C. § 754.

**C.   Personnel**

Pursuant to paragraph 5 of the Receivership Order, the Receiver utilizes the services of accountants, attorneys and other professionals to assist the SBA in operating the receivership. In June 2016, the Court approved the retention of Christine Lewis to serve as Principal Agent for the Receiver, replacing the former Principal Agent, Mr. E. Kevin Dahill. The Riggs Group, P.C., a Washington, DC-based CPA firm is retained to provide cash management and tax preparation services and maintain the accounting books and records of the Receiver. The Receiver retained CohnReznick, LLP to provide forensic accounting services. Additionally, the Receiver has retained the law firm Gottesman, Wolgel, Flynn, Weinberg & Lee, P.C. to represent the Receiver in New York in general receivership and litigation matters. The Receiver had retained the New York law firm of Marino Partners, P.C. to assist in the liquidation of several assets, however the retention ended upon the final liquidation of those assets. Additionally, the law firm Shechtman Halperin & Savage is

3

retained to represent the Receiver in Massachusetts, and the Washington DC office of Baker Donelson is retained to advise on legal matters involving securities transactions.

D.  **Claims Matters**

A motion to establish the form and manner of notice to claimants and establishing a Claims Bar Date was filed on April 11, 2014 and the Order approving that motion was entered on May 5, 2015. Twelve (12) claims were submitted by the Bar Date. On May 5, 2015, this Court entered an order approving the Receiver's recommendation of the treatment, priority and payment of those claims which totaled $211,395.16. With the exception of SBA's claim, all court-approved claims have been paid in full, and the Receiver has made payments totaling $1.5 million to SBA as partial payments of its court-approved claim. The only remaining claims are ongoing administrative expenses of the receivership and the SBA's claim.

E.  **Accounting and Tax Matters**

The Receiver notified the federal and New York State taxing authorities that Elk was placed into federal receivership and that this Court has exclusive jurisdiction of all matters involving the Elk receivership estate. As of this date Elk is current on all tax filings.

F.  **Corporate Compliance**

Elk is a New York corporation. The Receiver notified the Secretary of State for New York when Elk was placed in receivership. CT Corporation serves as the registered agent in New York.

IV.  **ASSET ACCOUNTS**

At the start of the receivership, the Receiver identified twenty-one (21) asset accounts, including loan accounts, equity investments, artwork, computer equipment and claims for accounts receivable from Elk's parent. To date, the Receiver has sold, collected, or closed ten (10) assets and charged-off two (2) uncollectible

assets (See Sections B and C for details). The status and Receiver's recommendations as to the remaining nine (9) assets and claims are discussed in Sections D and E of this Section.

During the course of the receivership, the Receiver identified additional claims of Elk which the Receiver is pursuing through litigation, as discussed in Part V. <u>Litigation</u> of this Report.

A.  **Cash**

There was $17,415.85 cash on hand at the start of the Receivership. Since the inception of the receivership, there has been a net increase in funds in the amount of $3,633,137.66. The increase in funds is comprised primarily of proceeds from assets sales of assets, repayments of loans and miscellaneous refunds and reimbursements.

In a previous period, the Receiver received $200,000 from a Receiver's Certificate to fund ongoing operations of the Receivership, which was repaid in full, including accrued interest of $33,370, on June 25, 2015. The balance in the account as of April 30, 2016 was $717,796.04. A detailed Summary of Cash Receipts and Disbursements during this reporting period and from the inception of the receivership through April 30, 2017 is attached as **Exhibit A** to this Report.

B.  **Assets Sold or Closed in PRIOR Reporting Periods**

1.  <u>Alpha Media Group, Inc.</u>: During a previous reporting period, the company was sold; escrow closed during this reporting period delivering $1,109 in this period. Total net proceeds to the Receiver were $86,308.

2.  <u>Artwork belonging to Elk</u>: During a previous reporting period decorative artworks were sold at auction with net proceeds to the Receiver of $16,104.

5

3. <u>Capital Equipment belonging to Elk</u>: A hard-wired telephone switch and unusable office equipment were written off during a previous reporting period, since the cost of recovery was projected to be greater than the potential value of a sale of the equipment.

4. <u>Conklin Services and Construction Incorporated</u>: During a previous reporting period this loan was sold and delivered proceeds of $303,474 to the Receiver.

5. <u>E & Y Construction</u>: During a previous reporting period this loan was sold to the borrower with net proceeds to the Receiver of $981,035.

6. <u>Fusion Telecommunications</u>: During a previous reporting period 69,736 shares of common stock were sold at market with net proceeds to the Receiver of $6,514.

7. <u>Golden Triangle Enterprises, LLC</u>: During a previous reporting period this loan was sold to the borrower with net proceeds to the Receiver of $158,500.

8. <u>Greaves-Peters Laundry Systems</u>: During a previous reporting period an outstanding judgment was settled with net proceeds to the Receiver of $34,595.

9. <u>Soundview Broadcasting, LLC</u>: During a previous reporting period this loan was sold to an independent investor with net proceeds to the Receiver of $1,493,350.

10. <u>Geronimo ATM Fund, LLC</u>: Collection efforts have ceased with this Court's approval. (*See* Docket No. 76).

C. **Assets Sold or Closed in THIS Reporting Period**

11. <u>Education Affiliates, Inc.</u>

As reported in the Third Receiver's Report, Education Affiliates, Inc. ("EAI"), a privately-funded network of post-secondary schools, completed a capital restructure in 2015 that resulted in

the conversion of Elk's investment in EAFI from debt to a minority equity interest, comprised of preferred and common stock. In March 2016, the Receiver received an offer from the primary equity shareholder for the purchase of all of Elk's equity interests in EAI. The Receiver evaluated the offer in light of EAI's financial condition and the Receiver conducted additional marketing efforts, which ultimately resulted in the Receiver's agreement to sell Elk's interests in EAI to the original offeror at the increased price of $75,000. The sale was concluded on June 9, 2016. Since the beginning of the Elk receivership, the Receiver collected a total of $285,113.95 from this investment, including $75,000 from the June 2016 sale of the equity interests and $210,113.95 from loan payments received prior to the capital restructuring in 2015. This account is now closed.

12.  Mountain View Bar and Grill

As reported in previous Receiver's Reports, prior to the commencement of the Elk receivership, Fundex Capital Corporation ("Fundex") made a loan to Mountain View Bar and Grill ("Mountain View") in the original principal amount of $825,000, secured by first mortgage on the property located in Morris County, New Jersey and a liquor license. Fundex then sold a 50% undivided interest in the Mountain View Loan to Elk, evidenced by a Participation Agreement and Partial Assignment of Mortgage and Partial Assignment of Leases and Rents. Mountain View defaulted on the loan and the business ceased operating pre-receivership. The real property was foreclosed by the second mortgagee, subject to the first mortgage held by Fundex, of which Elk owned a 50% interest.

Over the course of several years, and with contributions from Elk (and then the Receiver) as required by the Participation Agreement, Fundex maintained the property, resolved the many issues and complications that impeded the ability to sell the property, and finally, sold the real

property and liquor license in one transaction on May 1, 2017, for the total sales price of $515,000, of which the Receiver received net sales proceeds of $235,744.75[2]. This account is closed.

**D.    Open Assets**

13.    <u>Andy Fur Dry Cleaning</u>

<u>Investment Summary:</u>
Original Principal    $60,000
Investment Date       November 11, 2004
Interest Rate         14.5%
Maturity Date         October 13, 2009
Outstanding Balance   $12,103

Andy Fur Dry Cleaning, Inc. was a New York City- based fur cleaning and storage business that defaulted on a loan made by Elk in 2004 in the original principal amount of $60,000. Upon default in repayment in 2009, Elk retained counsel to pursue collection actions on a contingency basis (25% of recovery). In October 2010, a judgment was secured in favor of Elk in the amount of $18,668. Prior to commencement of the Elk receivership in April 2013, Elk had written down the carrying value of this asset to zero due to lack of success in its collection efforts. Subsequently, the Receiver confirmed with the attorney who was retained by Elk prior to the receivership that his collection efforts were not successful and he had ceased his efforts. As reported in the Third Receiver's Report, an offer from a third party to acquire the judgment for a nominal sum ($200.00) was received, but collection of this judgment is complicated by 1) the inability to locate the obligors, 2) a 25% contingency fee may remain payable from funds collected to the pre-receivership attorney who obtained the judgment for Elk, 3) collections may be subject to a participation agreement, and 4) administrative and legal costs to close such sale would exceed

---

[2] These sales proceeds are not reflected in the cash balance on Exhibit A – Schedule of Cash Receipts and Disbursements because the funds were received after April 30, 2017.

8

the offer amount and is not cost-effective to the receivership estate. Unless the Receiver is able to sell or collect this judgment prior to the termination of the receivership, the judgment will be assigned to SBA as partial payment of its claim, as approved by this Court's Order entered May 5, 2015.

14.  Charlie Brown's Acquisition Company

Investment Summary:

| | |
|---|---|
| Original Principal | $2,000,000 |
| Investment Date | June 28, 2007 |
| Interest Rate | 10.25% |
| Maturity Date | November 14, 2014 |
| Outstanding Balance | $2,356,682 |

Charlie Brown's Acquisition Company's parent company filed for bankruptcy pre-receivership in 2010. A bankruptcy plan was subsequently completed and approved by the relevant court. Under the Plan, proceeds to second-tier, secured lenders (Elk's position) are dependent upon the proceeds of the sale of Bankruptcy Trust assets. The Receiver contacted the Liquidating Trustee, who recently informed the Receiver that the claims reconciliation process has not yet been finalized. The Liquidating Trustee projects resolution by the end of 2017 and advises that there may be funds available for nominal distributions to creditors, including Elk. The Receiver will continue to monitor this asset and report to this Court in the next Receiver's Report.

15.  PPCP Inc.

Investments Summary: (3 Loans)

| | |
|---|---|
| Original Principal | $20,000—$15,000---$6,500 |
| Investment Dates | May 8, 2003, May 31, 2002, November 19, 2004 |
| Interest Rate | 8% |
| Maturity Date | April 1, 2009, March 1, 2009, March 1, 2009 |
| Outstanding Balances | $16,545; $14,272; $5,965 |

9

PPCP, Inc. was a software programming and services company located in the Bronx, NY, with a single proprietor/programmer. PPCP was retained by Elk for programming services on Elk's loan tracking software and received loans from Elk in anticipation of sales of that code to third parties. Elk's pre-receivership files indicate that the loans were in default as early as 2009, Elk wrote the carrying value of the loans to zero, and made demands on the Company and guarantor, Mr. Robert Cash, who vigorously disputed Elk's demand.

The Receiver determined that collection efforts should be ceased because 1) the Company is no longer in business and the guarantor, a British national, is believed to be living in Europe since 2010, 2) the loan documents do not appear to be fully-executed or perfected, and 3) collection efforts would require commencement of litigation, which would not be cost-effective for the receivership. For these reasons, the Receiver recommends and requests that the Court approve the abandonment of collection efforts of Elk's loans to PPCP.

16.  <u>Vivas & Associates, Inc.</u>

<u>Investment Summary</u>:
Original Principal    $50,000
Investment Date       November 15, 2004
Interest Rate         9%
Maturity Date         December 13, 2009
Outstanding Balance   $11,984

The business was a nail salon operating in Brooklyn, New York. The loan was secured by personal guarantees of the principals. The company ceased operations in 2007 and stopped making payments. Prior to this Receivership, Elk wrote the carrying value of the loan to zero.

Elk pre-receivership management informed the Receiver that Vivas ceased operations in 2007. Although the loan was secured by personal guarantees of the Company's officers, the

10

Receiver has determined that collection efforts likely will not prove successful, particularly because it appears that Elk's pre-receivership management failed to take the necessary actions to perfect collateral documents and failed to timely commence any collection action prior to commencement of the receivership. For these reasons, the Receiver recommends and requests that the Court approve the abandonment of collection efforts of Elk's loans to Vivas.

17. <u>Berko Realty</u>

Berko Realty was a joint participation loan led by Fundex Capital Corp. Fundex subsequently made demand on Berko and entered into a Forbearance Agreement with Berko that requires periodic payments and matures in July 2017. Fundex has received periodic payments from the debtor and remitted to the Receiver Elk's pro-rata share of each payment. The remaining balance due to Elk is approximately $5,250. The Receiver expects that this asset will be concluded in the next reporting period ending April 30, 2018, and will update the Court in the next Receiver's Report.

18. <u>10,000 shares of Ameritrans Capital Corporation common stock</u>.

On October 5, 2016, Ameritrans filed for a voluntary petition for protection under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts ("Americtrans Bankruptcy Action"). Ameritrans's Official Form 206Sum shows that its liabilities of $12,854,403.33 exceed its assets of $736,163.80, therefore rendering its common stock valueless.

19. <u>Receivable from Ameritrans</u>:

In its disclosure forms filed in the Ameritrans Bankruptcy Action, Elk is named as an unsecured creditor in the amount of $12,339,927, which debt was recorded on the books and records of Ameritrans as "Due to Elk", and was recorded as an asset on Elk's books and records as "Due from Ameritrans". This obligation arose from cash transfers from Elk to Ameritrans and from payments made by Elk for Ameritrans's expenses. On January 20, 2017, the Receiver filed its Proof of Claim in the amount of $12,339,927.

As part of its due diligence, the Receiver issued subpoenas to obtain bank statements and other Elk and Ameritrans's records, and the Receiver retained the services of a forensic accounting firm which, along with the Receiver, analyzed the financial records and filings of both Elk and Ameritrans from 2008 through 2013. The analysis supports that an additional $1,931,111 of Elk funds was used by Ameritrans to pay Ameritrans expenses for the nine month period ended March 31, 2013. Thus, the total outstanding amount due Elk from Ameritrans is $14,271,038. This amount is also reported on Ameritrans's SEC Form10-Q for the period ended March 31, 2013. Therefore, on June 2, 2017, the Receiver filed an amended Proof of Claim in the amount of $14,271,038 in the Ameritrans Bankruptcy Action, which is pending resolution.

### E.   **Other Interests in Special-Purpose Entities**

20.   <u>633 Mead Street, LLC</u> (60% owned by Elk)

The sole asset of this entity was an abandoned building lot at 633 Mead Street in the Bronx, NY. The lot was part of the collateral for an Elk business loan and was transferred to Elk as part of a foreclosure settlement. Ameritrans is the managing member and a 40% owner of 633 Mead

Street, LLC. During the previous period, Elk recovered approximately $9,000 in costs expended by Elk to facilitate the sale of this property. However, the sales price was not sufficient to satisfy the primary mortgage holder and no additional recovery is expected from this asset. 633 Mead Street is still registered in New York State. As reported in the Third Receiver's Report, the Managing Member (Ameritrans) confirmed that 633 Mead Street is inactive and will be administratively dissolved.

21. EAF Holdings Corporation

EAF Holding Corporation ("EAFH") is a wholly-owned, special purpose subsidiary of Elk, which was formed to hold Elk's interest in the Mountain View liquor license (discussed at Section 12, above). The liquor license was sold in connection with the sale of the Mountain View real property on May 1, 2017. The Receiver is evaluating the actions necessary to dissolve the EAFH entity and related costs, if any.

V. LITIGATION

A. Claims and Litigation against Elk's former Officers and Directors

During the course of its forensic analysis of Elk's and Ameritrans's records, the Receiver became aware of numerous pre-receivership irregularities in the operation of Elk, which caused the Receiver to commence a civil action in this Court against Elk's officers and directors for breaches of fiduciary duties, ultra vires acts, waste of corporate assets, conversion, negligence, aiding and abetting a breach of fiduciary duty, civil conspiracy, and gross negligence. Filed on June 14, 2017, the action is titled *U.S. Small Business Administration as Receiver for Elk Associates Funding*

*Corporation v. Michael Feinsod, et al* (Case No. 2:17-cv-03586, E.D.NY) ("O&D Action").

In its complaint, the Receiver alleges that the officers and directors of Elk named therein caused and/or approved improper advances from Elk to Ameritrans of at least $14,271,038, and that the advances by Elk to Ameritrans, which were approved by the Boards of Directors of both companies, constitute violations of the Regulations, including, but not limited to, 13 C.F.R. §107.730, *Conflict of Interest*, and 13 C.F.R. §107.885, *Disposition of Assets to an Associate*. As a result, the Receiver determined that Elk's officers and directors, both individually and together with each other, took actions or failed to act when appropriate in violation of applicable state law, the Small Business Investment Act, SBA's Regulations, and Elk's Articles of Incorporation. The wrongful acts or omissions include but are not limited to:

- Causing Elk to transfer at least $7,491,139 to Ameritrans to pay its management and operating expenses;

- Causing and allowing the wrongful transfer of Elk's cash for no consideration of at least $6,779,898 to Ameritrans to satisfy its liabilities to its creditors and/or maintenance of Ameritrans's investments

- Making, causing, or allowing to be made, illegal loans to Ameritrans to unjustly enrich the defendants and others at Elk's expense.

As of the filing date of this Fourth Receiver's Report, all waiver of service forms have been filed the Court and the Defendants' respective responses are due on or about August 14, 2017. The Receiver will update this Court in the next Receiver's Report.

## VI.     RECEIPTS AND DISBURSEMENTS

The Schedule of Cash Receipts and Disbursements, attached as **Exhibit A**, sets forth receipts and disbursements for the period from May 1, 2016 through April 30, 2017.

14

## VII. <u>CONCLUSION</u>

This Receiver's Report was prepared by Christine Lewis, as Principal Agent for the Receiver, with financial and accounting information provided by The Riggs Group, P.C.

Respectfully submitted,

Dated: 7/24/17

_____
CHRISTINE M. LEWIS
Principal Agent for SBA as Receiver for
Elk Associates Funding Corporation