```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA, on behalf of
its agency, the United States Small
Business Administration,

                    Plaintiff,

        -against-

ELK ASSOCIATES FUNDING CORP.,

                    DEFENDANT.
----------------------------------------X
```

FILED
CLERK
4:38 pm, Nov 10, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM & ORDER
13-CV-1326(JS)(SIL)

```
APPEARANCES
For Movants:    Sara E. Margolis, Esq.
                MoloLamken LLP
                430 Park Avenue, Sixth Floor
                New York, New York 10022

                Justin V. Shur, Esq.
                Rayiner I. Hashem, Esq.
                MoloLamken LLP
                600 New Hampshire Avenue, NW
                Washington, DC 20037

For the
Receiver:       Arlene M. Embrey, Esq.
                U.S. Small Business Administration
                409 Third Street, SW, Seventh Floor
                Washington, DC 20416

                Steven Weinberg, Esq.
                Gottesman, Wolgel, Flynn, Weinberg & Lee, P.C.
                11 Hanover Square, Fourth Floor
                New York, New York 10005
```

SEYBERT, District Judge:

Michael R. Feinsod ("Feinsod") and Richard L. Feinstein ("Feinstein") (together, "Movants"), former directors and officers of Elk Associates Funding Corporation ("Elk"), move this Court for an order lifting the receivership stay entered on April 24, 2013

for the limited purpose of allowing Movants to file an action against the Small Business Administration ("SBA") in its agency capacity. (Mot., D.E. 104; Movants' Br., D.E. 104-1; Rec'r Opp., D.E. 106-2; Reply, D.E. 109.) For the reasons that follow, the motion is DENIED.

BACKGROUND AND PROCEDURAL HISTORY[1]

I.   Elk and the SBA

The SBA issued Elk a Small Business Investment Company ("SBIC") license in 1980. As a SBIC, Elk made loans to small businesses through private capital and money raised by selling debt instruments ("Debentures") to the SBA. In 1999, Ameritrans Capital Corporation ("Ameritrans") was formed to acquire and manage Elk as a wholly-owned subsidiary. (Movants' Br. at 3.) In January 2009, Elk applied for SBA financing. The SBA did not provide financing for almost a year and Elk encountered difficulty raising capital. As a result, Elk became underfunded and on July 8, 2010, the SBA informed Elk that it was "capital impaired." Under the relevant regulations, SBICs that remain capitally impaired are eligible for liquidation by the SBA.

---

[1] The facts are drawn from the docket and the parties' submissions and are recited to the extent necessary to resolve the instant motion. The Court presumes the parties' familiarity with the underlying facts.

To cure its capital impaired status, Ameritrans and Elk sought to sell equity in Ameritrans to private investors. However, the transactions required SBA approval. In 2011 and 2012, Elk and Ameritrans reached deals with two investors that, if successful, would have allegedly raised sufficient funds to recapitalize the companies. The SBA denied both transactions. In February 2012, Elk remained in capital impaired status and the SBA indicated that it intended to begin liquidation to recover the amount Elk owed to the SBA under outstanding Debentures.

## II. The Elk Action Settlement

On March 20, 2012, Elk initiated an action against the SBA, among others, under the Administrative Procedure Act alleging that the SBA acted arbitrarily and capriciously when it denied the transactions that would have allowed Elk to raise "the capital required to prevent Elk from being liquidated." See Elk Assocs. Funding v. U.S. Small Bus. Admin., No. 12-CV-0438 (D.D.C.) (the "Elk Action"); (See Movants' Br. at 4.)

On October 31, 2012, Elk and the SBA executed a "Settlement Agreement and Mutual Release" that resolved the Elk Action (the "Settlement"). (Settlement, Ex. A to Mot., D.E. 104-2.) As relevant here, the Settlement required, among other things, that Elk: (1) pay $7,900,000 to satisfy its outstanding debt to the SBA (Settlement at 2 ¶ 1) and (2) execute a Consent Order of Receivership to be filed by the SBA "only in the event that ELK

3

fails to make the Payment" as required by the Settlement (Settlement at 3 ¶ 4).[2]  The Settlement also contained mutual releases.  As pertinent here, the SBA, and its "officers, officials and its present and former employees and agents, in their official capacities only" released Elk, including Elk's officers and directors, from "any and all actions."  (Settlement at 3-4 ¶ 6.)

III. This Action[3]

On January 4, 2013, Elk made an initial payment of $1.2 million to the SBA but failed to pay the remaining amount due under the Settlement.  (Movants' Br. at 5.)  Consistent with the terms of the Settlement, on February 14, 2013, the SBA commenced this Action (Compl., D.E. 1) and on April 5, 2013, filed the proposed Consent Order of Receivership (Proposed Order, D.E. 7-1).  On April 24, 2013, the Court entered the Consent Order of Receivership (the "Receivership Order") that appointed the SBA as the permanent, liquidating receiver of Elk (the "Receiver") and entered judgment in favor of the SBA in the amount of Elk's outstanding debts, over $20 million.  (Receivership Order, D.E.

---

[2] The parties amended the Settlement on December 7, 2012 and allowed Elk to January 7, 2013 to make the required payment. (Am. Settlement, Ex. B. to Mot., D.E. 104-3.)

[3] The Honorable Leonard D. Wexler presided over this matter until April 4, 2018 when it was reassigned to then-District Judge Joseph F. Bianco.  This matter was reassigned to the undersigned on May 31, 2019.

4

15.) The Receiver was appointed "for the purpose of marshaling and liquidating all of Elk's assets and satisfying the claims of creditors therefrom in the order of priority as determined by this Court." (Receivership Order ¶ 1.) The Receivership Order enjoined and stayed all civil litigation involving Elk, Elk's assets, the Receiver, or Elk's present or past officers and directors, among others, absent permission from the Court. (Id. ¶¶ 7-8.)

IV. The Receiver Action

On November 17, 2016, the SBA, as Receiver, filed a motion to lift the stay imposed by the Receivership Order "for the limited purpose of allowing the Receiver to commence and pursue a civil action for (1) breach of fiduciary duty, (2) waste of corporate assets, (3) aiding and abetting a breach of fiduciary duty, (4) negligence and (5) any other applicable civil cause of action against the former officers and directors of Elk that approved, authorized or facilitated the advances from Elk to AmeriTrans." (Nov. 17, 2016 Rec'r Mot., D.E. 81.) The Receiver explained that: "[t]he $12 million debt . . . incurred by Elk [in favor of Ameritrans] . . . was authorized and approved by Elk's former officers and directors in violation of their fiduciary duties to Elk." (Nov. 17, 2016 Br., D.E. 81-1, at 9.) On November 21, 2016, the Court granted the motion, finding the proposed action was "reasonable and in the best interests of the Elk Receivership Estate." (Nov. 21, 2016 Order, D.E. 82, at 2.)

5

No party opposed the motion or objected to the Court's November 21, 2016 order.

On June 14, 2017, the SBA, as Receiver, commenced an action against Elk's former officers and directors, including Movants, asserting claims for: (1) breach of fiduciary duty, (2) ultra vires acts, (3) waste of corporate assets, (4) conversion, (5) negligence, (6) aiding and abetting a breach of fiduciary duty, (7) civil conspiracy, and (8) gross negligence. See U.S. Small Bus. Admin. v. Feinsod, et al., No. 17-CV-3586 (E.D.N.Y.) (the "Receiver Action").[4] On October 6, 2017, Movants, as Defendants in the Receiver Action, filed a motion to dismiss and argued, among other things, that the Settlement's release provisions barred the action against Elk's former directors and officers from liability. (Omnibus Br., Receiver Action, No. 17-CV-3586, D.E. 47-1, at 24-25.) Movants also argued that through the Receiver Action, "the SBA seeks to vindicate its authority as an agency and hold Elk's former directors and officers liable for violations of SBA regulations." (Id. at 25 (emphasis omitted).)

On October 1, 2018, Judge Bianco issued a Memorandum and Order dismissing the Receiver's claims for aiding and abetting breach of fiduciary duty and conspiracy. See U.S. Small Bus. Admin. v. Feinsod, 347 F. Supp. 3d 147, 151 (E.D.N.Y. 2018) (the

---

[4] The Receiver Action is also pending before the undersigned after reassignment from Judge Bianco on June 4, 2019.

6

"Receiver Action Order"). However, the court allowed the remaining claims to proceed and specifically denied Movants' arguments "based upon the [S]ettlement agreement," because "the SBA is bringing this action in its role as receiver for Elk, [and] the terms and conditions of the [S]ettlement agreement do not apply here." Id. at 161 n.11. Thereafter, Movants filed amended answers and asserted affirmative defenses including that the Receiver Action is barred by the Settlement. (See, e.g., Feinsod Sec. Am. Answer, Receiver Action, No. 17-CV-3586, D.E. 106, ¶ 269; Feinstein Sec. Am. Answer, Receiver Action, No. 17-CV-3586, D.E. 107, ¶ 269.) The Receiver Action remains pending.

V. The Pending Motion and the Parties' Arguments

On October 25, 2019, Movants filed their motion requesting that the Court lift the stay imposed by the Receivership Order for the limited purpose of allowing Movants to file suit against SBA, as an agency, to enforce the terms of the Settlement. (Movants' Br. at 1.) The Court heard oral argument on July 30, 2020. (Min. Entry, D.E. 114.)

At oral argument, counsel for Movants stressed that in negotiating the Settlement, the parties "bargained for [a] broad release" because Elk understood that the SBA may one day become Receiver and "wanted to make sure the SBA and its agents would[] [not] come back and sue them in the future." (Oral Arg. Tr. ("Tr.") at 9:4-13.) As detailed in their brief, Movants argue

7

that all factors weigh in favor of lifting the stay: (1) they have a meritorious claim against the SBA for breach of contract because "SBA and its officials" are "controlling the Receiver to pursue a suit to vindicate the SBA's interests as regulator and creditor" in violation of the Settlement (Movants' Br. at 7-14; Reply at 3-9); (2) they risk financial injury (Movants' Br. at 14); and (3) the advanced age of this Action supports lifting the stay (id. at 14-15).

The Receiver opposes the motion and responds, among other things, that the SBA, as Receiver, is not a party to the Settlement and therefore is not bound by the release provisions. (Rec'r Opp. at 9-10.) The Receiver further argues that Judge Bianco's decision in the Receiver Action, wherein he determined that the Receiver is not bound by the Settlement, is the "law of the case." (Id. at 10-11.)

## ANALYSIS

"When analyzing a motion to lift a litigation stay imposed by a receivership court," courts in this Circuit "utilize a three-part test articulated by the Ninth Circuit in S.E.C. v. Wencke, 622 F.2d 1363 (9th Cir. 1980) ("Wencke I") and S.E.C. v. Wencke, 742 F.2d 1230 (9th Cir. 1984) ("Wencke II")." United States v. JHW Greentree Capital, L.P., No. 12-CV-0116, 2014 WL 1669261, at *2 (D. Conn. Feb. 10, 2014) ("Greentree I") (citing S.E.C. v. Byers, 592 F. Supp. 2d 532, 536 (S.D.N.Y. 2008) aff'd,

8

609 F.3d 87 (2d Cir. 2010)); S.E.C. v. Callahan, 2 F. Supp. 3d 427, 437 (E.D.N.Y. 2014).

The Court considers: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." Greentree I, 2014 WL 1669261, at *2 (quoting Wencke II, 742 F.2d at 1231) (further citation omitted). "The Wencke test simply requires the district court to balance the interests of the Receiver and the moving party." Id. (quoting S.E.C. v. Univ. Fin., 760 F.2d 1034, 1038 (9th Cir. 1985) and citing United States v. Acorn Tech. Fund, L.P., 429 F.3d 438, 443 (3d Cir. 2005)). "The movant bears the burden of proving that the balance of the factors weighs in favor of lifting the stay." Id. (citations omitted). The Court addresses each factor in turn.

A. Maintenance of Status Quo and Injury to the Movant

"The first factor of the test 'essentially balances the interests in preserving the receivership estate' against the interests of the movant." KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC, No. 19-CV-1562, 2020 WL 4340518, at *2 (N.D.N.Y. July 28, 2020) (quoting S.E.C. v. Stanford Int'l Bank Ltd., 424 F. App'x 338, 341 (5th Cir. 2011) (summary order)).

Movants argue that the stay is not necessary to preserve the status quo because their proposed action does not seek relief from Elk's estate. (Movants' Br. at 14 (citing S.E.C. v. One Capital Corp., No. 08-CV-0667, 2010 WL 4878993, at *7 (S.D. Ohio Nov. 23, 2010)).) They further argue that they will incur "substantial out-of-pocket defense costs" defending the Receiver Action. (Movants' Br. at 14.) The Receiver responds, among other things, that "attorneys' fees and expenses do not constitute prejudice." (Rec'r Opp. at 12.)

Movants have failed to meet their burden in "demonstrating that their injury is sufficiently substantial to override the Receiver's interest in maintaining the status quo." Greentree I, 2014 WL 1669261, at *4. While Movants argue their proposed action does "not seek any affirmative relief from Elk's estate," they "seek an injunction to prevent further prosecution of the [Receiver Action] in violation of the" Settlement. (Movants' Br. at 14.) Further, Movants' argument that "[t]he claim will not burden the Receiver at all, because the SBA and its officials, officers, or employees would be the defendants in that case" (Movants' Br. at 14) contradicts the entire premise of their proposed action: that the SBA as an agency and the SBA as the Receiver are one in the same. Thus, the proposed action undoubtedly affects the Receiver's ability to marshal and liquidate Elk's assets, including the assets at issue in the

10

Receiver Action. See Rupert v. Winter, No. 10-CV-0799, 2012 WL 13102348, at *8 & n.16 (N.D. Tex. Jan. 24, 2012) ("The first factor, the balance of interests, weighs against lifting the stay because individual suits against agents, officers, or employees of [the entities in receivership] . . . could endanger the receivership status quo, diminishing the total pool of funds available for distribution to creditors.").

Moreover, Movants argue that they will suffer "substantial out-of-pocket defense costs" if the Receiver prevails in the Receiver Action (Movants' Br. at 14) yet they are sure to incur substantial litigation costs by commencing and prosecuting a new action, separate from and in addition to the costs incurred, and continuing to incur, defending the Receiver Action. Finally, "[u]nder New York law, causes of action for breach of contract and breach of the covenant of good faith and fair dealing are governed by N.Y. C.P.L.R. § 213(2), which provides for a six year statute of limitations." V.E.C. Corp. of Del. v. Hilliard, 896 F. Supp. 2d 253, 259 (S.D.N.Y. 2012). Thus, Movants' proposed claims do not lapse until 2022, six years after the date the Receiver requested to lift the stay to pursue the Receiver Action. As such, "the potential harm to [Movants] if the stay is continued is minimal." Huntington Nat'l Bank v. Saint Catharine Coll., Inc., No. 16-CV-0465, 2017 WL 6347971, at *7 (W.D. Ky. Dec. 12, 2017).

11

"Absent any specific indication in the record that harm to the Movants is substantial and constitutes more than simply a delay in collecting on a monetary judgment, the Court cannot conclude that this factor favors the Movants." Greentree I, 2014 WL 1669261, at *4. This factor therefore weighs against lifting the stay.

B. Timing in the Course of the Receivership

As for "the second factor of timing, the inquiry is fact-specific and 'based on the number of entities, the complexity of the scheme, and any number of other factors.'" KeyBank, 2020 WL 4340518, at *2 (quoting Stanford, 424 F. App'x at 341). "Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." Id. (quoting Wencke I, 622 F.2d at 1373-74). "By extension, as time passes and the receiver becomes better acquainted with his task, '[t]he merits of the moving party's claim may . . . loom larger in the balance.'" Id. (quoting Wencke I, 622 F.2d at 1374).

The receivership began on April 24, 2013, almost seven and a half years ago. In 2016, the Receiver stated it had "ample time to sort and organize Elk's receivership estate" and had "completed its claims process and made distributions to creditors." (Nov. 17, 2016 Br., D.E. 81-1, at 9; see Movants' Br.

12

at 14-15.) While this factor arguably supports lifting the stay, "continuing the stay is necessary to protect and preserve Receivership assets until [the outstanding] issues are resolved" in the Receiver Action. United States v. Petters, No. 08-CV-5348, 2015 WL 5333806, at *7 (D. Minn. Sept. 14, 2015). Therefore, this factor is neutral.

### C. Merits of the Underlying Claim

"As for the third and final factor, '[a] district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay.'" KeyBank, 2020 WL 4340518, at *2 (quoting Acorn Tech., 429 F.3d at 449) (alteration in original). "The more meritorious a movant's underlying claim, the more heavily this factor will weigh in the movant's favor." United States v. Greentree Capital, No. 12-CV-0116, 2014 WL 12756827, at *7 (D. Conn. May 16, 2014) ("Greentree II") (citing Wencke I, 622 F.2d at 1373). "However, even meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the Wencke II inquiry favor the receiver." Id. at *8 (citing Acorn Tech., 429 F.3d at 449).

As a preliminary matter, no matter how Movants frame their proposed action, it is clear that they seek equitable relief, namely, "an injunction to prevent further prosecution of the [Receiver Action] in violation of the" Settlement. (Movants' Br.

13

at 14.) This alone weighs against lifting the stay as discussed supra and for the added reason that an injunction is not a cognizable form of relief against the SBA. See 15 U.S.C. § 634(b)(1) (prohibiting district courts from entering orders of "attachment, injunction, garnishment, or other similar process, mesne or final . . . against the Administrator or his property"); Keita v. U.S. Small Bus. Admin., No. 07-CV-4958, 2010 WL 395980, at *4 (E.D.N.Y. Feb. 3, 2010) (noting that courts have interpreted 15 U.S.C. § 634(b) to "preclude injunctive or any similar relief against the SBA itself" (citation and alteration omitted)).

Nonetheless, Movants contend they have a colorable claim for breach of contract because the SBA and SBA agency officials "are circumventing [the Settlement's] release by directing and controlling the Receiver to pursue a suit [the Receiver Action] to vindicate the SBA's interests as regulator and creditor." (Movants' Br. at 10-14; Reply at 3-9.) The Receiver responds, among other things, that Judge Bianco already considered Movant's arguments and found them "to be without merit." (Rec'r Opp. at 10-11.) At oral argument, Movants argued that they are not challenging the Receiver Action Order. (Tr. at 15:10-13.) Rather, they argue that Judge Bianco determined the Settlement did not bar the Receiver from pursuing the Receiver Action but did not consider "whether the SBA as [an] agency was actually controlling the [R]eceiver." (Tr. at 15:1-9.)

14

Movants are correct that Judge Bianco did not explicitly address whether the Receiver commenced the Receiver Action at the bequest of the SBA in its capacity as an agency and regulator. However, the Court finds that Movants' proposed claims are without merit insofar as they were considered and rejected in the Receiver Action Order. See United States v. JHW Greentree Capital, L.P., No. 12-CV-0116, 2014 WL 2608516, at *9 (D. Conn. June 11, 2014) ("Greentree III") (lifting receivership stay and finding proposed claim meritorious over the receiver's objection where a separate district court's decision was "res judicata as it is a final judgment of the issues sought to be raised here")

Indeed, the arguments asserted here are nearly identical to those asserted three years ago in the Receiver Action. (Compare Omnibus Br., Receiver Action, No. 17-CV-3586, D.E. 47-1, at 25, with Movants' Br at 10, 13.) Judge Bianco denied these arguments, including those "based upon the settlement agreement," because the SBA initiated the Receiver Action "in its role as receiver for Elk" and "the terms and conditions of the settlement agreement do not apply." Receiver Action Order, 347 F. Supp. 3d at 161 n.11. Further, the Receiver Action Order undercuts Movants' proposed claim that the SBA directed the Receiver to commence the Receiver Action to further its agency objectives. (See, e.g., Movants' Br. at 13.) Judge Bianco unequivocally explained that although the "alleged violations of the SBIA and its regulations might be

15

relevant for purposes of establishing that [Movants] committed the asserted torts," the SBA, as Receiver, cannot maintain an action based solely on violations of the SBIA because "[t]here is no private right of action for a violation of the SBIA or its regulations." See Receiver Action Order, 347 F. Supp. 3d at 158 (emphasis added) (stating "[t]o the extent that [the Receiver] contends that the alleged SBIA violations (by themselves) establish liability, the Court rejects that assertion").

Similarly, the Receiver Action Order addressed Movants' proposed claim that the SBA seeks to "vindicate its rights as Elk's creditor" through the Receiver Action.[5] (See Movants' Br. at 13.) Judge Bianco carefully analyzed the Receiver's claims and parsed those that belong to Elk (through the Receiver) and those that belong to Elk's creditors (such as the SBA as a regulator and creditor). In doing so, the Court held that the Receiver may pursue its claim for breach of fiduciary duty, among others, "not as a creditor, but rather as receiver for Elk" because the Receiver "alleged injuries that are distinct from the injuries suffered by creditors." Receiver Action Order, 347 F. Supp. 3d at 160-61, 161 n.10 (emphases added). The Court explained that the claim(s)

---

[5] Movants in Greentree I made similar arguments. See Greentree I, 2014 WL 1669261, at *3 ("Somewhat contrarily, Movants also contend that the SBA is Greentree's largest creditor and thus has every incentive to maximize its own recovery . . . .").

16

"belongs" to Elk and the Receiver is "the proper party to bring this action." Id. Thus, that Judge Bianco dismissed the proposed claims "on the merits following comprehensive briefing on motion to dismiss that addressed the very issues on which [the court] based [its] dismissal" strongly indicates to the Court that the proposed claims are not meritorious.[6] Brandon v. NPG Records, Inc., No. 19-CV-1923, 2020 WL 2086008, at *7 (E.D.N.Y. Apr. 30, 2020); Greentree III, 2014 WL 2608516, at *7-9.

Even assuming the SBA directed the Receiver to initiate the Receiver Action in breach of the implied covenant of good faith and fair dealing, the Court concludes that lifting the stay is not warranted at this time due to the weight of the other Wencke factors. See discussion, supra (noting that Movants' proposed claims do not lapse until 2022); Greentree III, 2014 WL 2608516, at *9 ("However, even meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the Wencke II inquiry favor the receiver.").

Accordingly, two of the three Wencke factors tip in favor of maintaining the stay.

---

[6] Movants are not precluded from asserting defenses in the Receiver Action, such that the Receiver is proceeding in bad faith. However, if Movants "took issue with the [Receiver Action Order], the proper recourse was an appeal to the [Second] Circuit Court of Appeals, not a second bite at the apple." Brandon, 2020 WL 2086008, at *8 (citing Grieve v. Tamerin, 269 F.3d 149, 154 (2d Cir. 2001)).

17

CONCLUSION

For the reasons stated herein, Movants' motion to lift receivership stay (D.E. 104) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   November  10 , 2020
         Central Islip, New York

18